1 BARRY J. PORTMAN
  Federal Public Defender
2 JOHN PAUL REICHMUTH
  Assistant Federal Public Defender
3 555 12TH St. – Ste 650
  Oakland, CA 94607-3627
4 (510) 637-3500

5 Counsel for Defendant HIGGINS

6

7

IN THE UNITED STATES DISTRICT COURT

8

FOR THE NORTHERN DISTRICT OF CALIFORNIA

9

OAKLAND DIVISION

10

11 UNITED STATES OF AMERICA,                )    No. CR 09-00396-CW
                                            )
12                    Plaintiff,            )    DEFENDANT'S REPLY RE:
                                            )    MOTION TO DISMISS FOR PRE-
13 v.                                       )    INDICTMENT DELAY
                                            )
14                                          )    Date: October 19, 2011
   SEAN BRIAN HIGGINS,                      )    Time: 2:30 p.m.
15                                          )    Honorable Claudia Wilken
                      Defendant.            )
16 _____ )

17

18                              **INTRODUCTION**

19     Defendant Sean Higgins moved to dismiss the indictment against him based on the

20 government's lengthy delay in bringing charges.  The government opposed the motion on the

21 grounds that any prejudice to Mr. Higgins is speculative.  The government skips completely one

22 category of prejudice, lost records, and then lightly dismisses actual evidence of non-speculative

23 prejudice while assuring the court that the government's interviews show that the lost witnesses and

24 testimony would support the government's case, a common argument that wishes away cross-

25 examination and defense investigation as valid sources of exculpation.

26

DEF. REPLY RE: PRE-INDICTMENT DELAY

**ARGUMENT**

The most glaring omission of the government's position is its failure to address the loss of Elizabeth Kent's recollections as to key events. The undisputed evidence is that Ms. Kent was HT Oil's lawyer and that she assured the Controller and the CFO of HT Oil that inter-company loans between the partnerships were allowed by the partnership agreements. This is one of the key allegations of impropriety against Mr. Higgins. At trial, the defense would ask Ms. Kent, believing that the answer is "yes," whether Ms. Kent was of the belief, and advised Mr. Higgins accordingly, that Mr. Higgins' draws were also not prohibited by the partnership agreement. If Ms. Kent were to deny this fact, she would not be telling the truth. Neither her position regarding the draws nor her position regarding the inter-company loans is speculative. Ms. Kent's intimate involvement with the alleged improprieties, her continued advice to the company knowing of the draws and commingling, seems to make her something of a defense witness *per se*. The government's only response is that Ms. Kent "remembered Higgins' refusal to legitimize his unauthorized draws from the company's coffers." Gov. Opp 2. That does not clash with the defense's right and need to have Ms. Kent tell a jury that she advised Higgins that the inter-company loans and draws were not prohibited. They just needed to be formalized. All of these draws were fully documented and openly discussed among the company officers and Ms. Kent. The fact that formal documents were not drawn up, or that Mr. Higgins refused to "legitimize" the draws is not necessarily inculpatory. The evidence before the court is that a roll-up process was underway, and that that process would have addressed the issues of the draws. A refusal to draw up loan documents, pending a major company reorganization, is not unreasonable. The discussions about that reorganization, then, become key to the defense, as well.

The death of Mr. Rogers and the loss of his file, hence, is not a speculative loss to the defense, either. This is a key defense witness who discussed, in private, outside of the presence of Rudiger Wolff, the roll-up process. The government insinuates that the roll-up was a ruse when it says that Higgins "sold an investor on a purported reorganization of HT Oil." Gov. Opp. at 1. It is not speculative in this case to say that Paul Rogers would have testified that roll-up plans were bona fide

and underway. The loss of this witness and his records will prejudice the defense. The government argues that Rudiger Wolff was present at the meeting discussing the roll-up with Paul Rogers. There is evidence that Mr. Wolff had a bias and a motivation to accuse Mr. Higgins of improprieties as a means of seizing control of Higgins' company. In this sense, his testimony is not "cumulative" of Mr. Rogers' proposed testimony. The fact that two witnesses were present at the same meeting does not make them equally important to the defense. Mr. Rogers' was a well-respected business attorney. He was not involved in a ruse to get Mr. Wolff to lend HT Oil money. The defense has lost a key witness as to the legitimacy of the roll-up and the effect that process would have had on the issue of the draws.

The loss of Mr. Conlon is similarly prejudicial to the defense. Here, as with others, the government claims that this witness would have hurt the defense. The fallacy that the government can adequately investigate both sides of a case is strongly in evidence here. The defense has presented evidence that Mr. Conlon was "corrupt" and involved in a hostile takeover of HT Oil. This was not explored by the government in its interview, and to counter it, the government merely suggests that Mr. Conlon would have made allegations of financial improprieties against Mr. Higgins. But the point of the defense's argument is that the allegations of financial impropriety were used by Wolff, Johnston, and Conlon to take over HT Oil. Mr. Conlon would have had to have been cross-examined as to whether he was part of a plot to takeover HT Oil. Such a plot has to be fully developed before a jury, as it goes to the heart of the complaining witnesses' motives and bias in accusing Mr. Higgins of making false representations or taking unauthorized draws. As with Kent and Rogers, the lost testimony here is not speculative.

Again, the government assumes that it has the complete truth when it discusses Carol Korycinski. Merely because agents were able to interview her at length in 2009, the government claims her memory is intact. But nearly two years before this March 19, 2009 interview, she remembered "relatively little." What this means is that this key witness has lost knowledge of specific conversations and meetings key to the defense case. The loss of specific details about the

1  June 1, 2004 meeting in which accounting concerns were addressed, is not speculative.  The
2  defense has presented evidence that these four witnesses all had knowledge, if not records, of
3  relevant, admissible, and exculpatory information.
4      The government underestimates the effect that its delay has had on Mr. Higgins' ability to
5  defend himself.  It has not, for example, tried to explain why this matter was indicted nearly four
6  years after items were taken from HT Oil by the FBI.  In this case, the loss to Mr. Higgins is not
7  speculative.  Moreover, the court should consider the cumulative effect of the loss, effectively, of
8  four witnesses and the records of two witnesses when addressing this motion.  Mr. Higgins' due
9  process rights have been violated by this lengthy delay.

10 **CONCLUSION**

11     For the reasons stated above and in his motion to dismiss, Mr. Higgins respectfully asks the
12 Court to dismiss the indictment against him based on pre-indictment delay in violation of the Right
13 to Due Process.

14

15 Dated: October 5, 2011

16                                          Respectfully submitted,

17                                          BARRY J. PORTMAN
                                         Federal Public Defender
18
                                                 /S/
19
20                                          JOHN PAUL REICHMUTH
                                         Assistant Federal Public Defender

21

22

23

24

25

26